BERNARD KALATA, Plaintiff-Appellee and Cross-Appellant, v. ANHEUSER-BUSCH COMPANIES, INC., Defendant-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—89—1999

Opinion filed September 28, 1990.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe and Lynn D. Dowd, of counsel), for appellant.

Grotefeld, Johnson & Pekala, Chartered, of Chicago (Frank E. Glowacki and Carol M. Douglas, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Anheuser-Busch Companies, Inc. (defendant), appeals from a damages award entered in favor of Bernard Kalata (plaintiff) for personal injuries plaintiff sustained after slipping on a snow-and ice-covered landing located at a warehouse owned by defendant and leased to plaintiff's employer. Defendant contends on appeal that the trial court erred when it concluded that defendant negligently permitted an unnatural accumulation of ice and snow to occur and that the absence of a second handrail proximately caused plaintiff's injury. For the following reasons, the judgment in favor of plaintiff is reversed and the case is remanded for entry of judgment in favor of defendant.

On January 9, 1984, at approximately 6:30 a.m., plaintiff arrived at defendant's warehouse and proceeded to enter it. After a short, work-related stay inside, plaintiff and his assistant, Robert Ubriarco, prepared to exit the building. Ubriarco exited first and slipped, but did not fall, as he proceeded down the left side of the stairs. Plaintiff followed next, carrying some work-related items in his right hand. As plaintiff began to descend down the left side of the stairway, he slipped on snow-covered ice located on the landing. At the time of his fall, plaintiff was holding the left railing; the stairway contained no righthand railing.

At trial, plaintiff predicated his claim for relief on defendant's negligence in permitting its gutters and roof to leak water onto the landing upon which he fell. Plaintiff further alleged that the landing was defective in that it lacked a sufficient pitch to allow water to properly drain. Finally, plaintiff claimed that defendant negligently failed to install both a canopy over the landing in order to prevent water from accumulating upon it and a second handrail along the right side of the stairway.

At the close of the evidence, the trial court entered judgment in favor of plaintiff in the amount of $361,217.41, but reduced the award by 50% to $180,608.70 due to plaintiff's comparative negligence. The trial court found that plaintiff's injuries were caused by water dripping from the roof and gutters of defendant's building and the absence of a second handrail. The trial court made no express findings, however, as to whether the landing upon which the water dripped was defective, or whether defendant negligently failed to install a canopy.

The first issue on appeal is whether defendant negligently permitted an unnatural accumulation of snow and ice to occur on its landing. The law in Illinois with respect to this issue is well settled.

In *Graham v. City of Chicago* (1931), 346 Ill. 638, 641, 178 N.E.

911, 912, the Illinois Supreme Court adopted the rule that a municipality is not liable for injuries that occur on its streets and sidewalks as a result of a natural accumulation of ice and snow. The court reasoned that it would be unreasonable to place a duty on a city to remove natural accumulations because of the significant drain on resources this duty would impose. *Graham*, 346 Ill. at 641, 178 N.E. at 912.

Significantly, the *Graham* court distinguished situations where a city could be charged with creating an artificial accumulation of snow or ice. In these situations, because the rationale of limited resources no longer applies, imposing a duty on the city to correct the condition would not be unreasonable where the city has actual or constructive notice of the condition. (*Graham*, 346 Ill. at 641, 178 N.E. at 913.) Thus, in *Graham*, the city was found liable for a fall on an icy sidewalk which occurred when the city overflooded an adjacent ice rink.

■ The law set forth in *Graham* has been generally extended to private landowners. (See *Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288 (property owner is under no obligation to clear snow from sidewalks adjacent to premises).) Even where the injured party can be assigned an invitee status, or is a tenant who slips on ice located within an area common to all tenants, there is no duty of a private landowner to remove natural accumulations. (See *Cronin v. Brownlie* (1952), 348 Ill. App. 448, 109 N.E.2d 352 (landlord-tenant); *Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 241 N.E.2d 222 (proprietor-invitee).) In short, liability hinges not on the relationship between the defendant and the injured party, but rather on the determinations of whether the accumulation was natural or unnatural, whether the defendant created it directly or indirectly, and whether defendant can be charged with knowledge of its existence. *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center* (1989), 187 Ill. App. 3d 1040, 1043, 543 N.E.2d 1014, 1016; *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 557, 467 N.E.2d 947, 949.

■ As to the determination of whether an accumulation is natural or unnatural, a plaintiff must affirmatively plead and prove an unnatural accumulation. (*DeMario v. Sears, Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 50, 204 N.E.2d 330, 332.) The cases on this element of plaintiff's case show that this requirement is not met unless plaintiff shows a defect in the underlying premises, or an affirmative, yet negligent, undertaking by the defendant to remove the snow or ice. *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145, 407 N.E.2d 1031, 1033. See *Graham*, 346 Ill. 638, 178 N.E. 911 (overflow from ice rink); *Bellino v. Village of Lake in the Hills* (1988), 166

Ill. App. 3d 702, 520 N.E.2d 1196 (no allegation that underlying street contained defect); *Lapidus v. Hahn* (1983), 115 Ill. App. 3d 795, 450 N.E.2d 824 (water repeatedly dripped in torrents from roof into a depression on platform); *Bansch v. Donnelly* (1979), 77 Ill. App. 3d 922, 396 N.E.2d 869 (no showing that alteration of building's facade altered natural flow of water); *Jones v. City of Rock Island* (1968), 101 Ill. App. 2d 174, 242 N.E.2d 302 (defective condition of curbing, gutter and adjacent sidewalk); *Durkin v. Lewitz* (1954), 3 Ill. App. 2d 481, 123 N.E.2d 151 (hole in gutter).

▆▆ Turning to the facts of this case, plaintiff alleged that the ice on the landing where he fell was attributable to water dripping from defendant's gutter or roof. Plaintiff, however, offered no direct testimony, whether lay or expert, to show that a design deficiency existed in the roof or gutter. While the absence of direct evidence of a defect is not fatal to plaintiff's claim, the circumstantial evidence plaintiff presented fails to raise a triable issue of whether a design deficiency existed.

Plaintiff and Ubriarco testified as to how water came off the roof after a heavy rainfall or snowfall. This testimony is not helpful to plaintiff, because January's climatological report received in evidence and reviewed by the parties' experts demonstrates that no heavy snowfall occurred. The only snowfall of significance, three inches on January 1, 1984, occurred more than one week before the date of plaintiff's injuries.

Plaintiff also testified in reference to the source of the ice on the landing. He stated how water always came from the gutter. Ubriarco made a similar statement, except he testified that water came off the roof over the gutter. This testimony is insufficient. First, there is absolutely no testimony that this condition existed at or near the date of the accident. The testimony was from a historical perspective. Second, because no foundation was offered for these statements, it is not clear from the record whether these statements refer to heavy or light snowfalls. Even if they refer to drippings from light snowfalls, the two statements are inconsistent. While one may conceivably infer a defect from evidence that water drips from the bottom of a gutter, or that water leaks from between the roof and a gutter, an inference of a defect cannot be drawn where water flows over a gutter. In the former situations, a properly manufactured and installed gutter should catch normal roof runoff. In the latter, where ice fills the entire gutter, normal roof runoff will run over the gutter. This is an entirely natural process. See *Linde v. Welch* (1981), 95 Ill. App. 3d 581, 582, 420 N.E.2d 490, 492.

Plaintiff also testified that any time there was snow on the roof or ground and it was a sunny day, water would come off the roof. This testimony again, however, reveals nothing regarding the existence of a defect. Dripping water from above, without more, is not sufficient by itself to justify a conclusion that a defect existed.

Both plaintiff and Ubriarco also testified as to icicles, but differed as to their location. Plaintiff testified that icicles would be located along the side of the building, while Ubriarco stated they would also hang over the rain gutter. Again, this testimony cannot support a conclusion that defendant's gutter or roof was defective. Moreover, this testimony only reflects conditions at some time in the past.

■ Finally, the need to show a specific defect was particularly acute here because of the general slipperiness of the surrounding area. On cross-examination, plaintiff testified that it was snowing on the day of the accident and that it snowed the night before the accident. It was below freezing that morning, and the parking lot and street conditions were slippery. Plaintiff testified that he slipped in the parking lot just prior to entering the warehouse and that the steps on which he entered were slippery. Because of this testimony, plaintiff's showing of some defect in the gutter or roof was necessary to show that any accumulation of ice on the landing was not an accumulation attributable to slippery conditions in general.[1]

In addition to plaintiff's failure to submit any evidence of a defect in the gutter or roof, plaintiff has also failed to submit any evidence of a defect in the landing. Plaintiff presented John Gliottoni as an expert to support his theory that the landing was defective in that it was not sloped. Gliottoni testified that based upon a reasonable degree of construction standards, the pitch of the landing should have been one-quarter inch per foot. Because the landing was 48 inches wide, Gliottoni stated the landing should pitch one inch towards the parking lot. He claimed that without this pitch, the landing was not in a safe condition because water could not properly drain.

■ Plaintiff has presented no cases to support his position that a landing's lack of a slope, by itself, constitutes a defect in the sense that the lack of a slope permits water to accumulate unnaturally. Our review of Illinois case law indicates that a lack of a slope is not the type of a defect for which recovery has been allowed. (See *Lapidus v.*

---

[1]Because plaintiff failed to prove the accumulation was other than natural, defendant was under no duty to install a canopy. See *Greenwood v. Leu's IGA Food Liner* (1973), 14 Ill. App. 3d 11, 16, 302 N.E.2d 359, 363 (where accumulation is natural, an owner has no duty to provide adequate safeguards to prevent falls).

*Hahn* (1983), 115 Ill. App. 3d 795, 450 N.E.2d 824 (water trapped by depression in platform); *Jones v. City of Rock Island* (1968), 101 Ill. App. 2d 174, 242 N.E.2d 302 (gutter and sidewalk in broken and uneven condition); *Stroyeck v. A.E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689 (sidewalk with 13.6% grade).) Accordingly, we conclude that Illinois law does not support plaintiff's assertion that the landing was defective.

The second issue on review is whether the trial court erred when it concluded that the absence of a second handrail proximately caused plaintiff's injury. The record demonstrates that the stairway where plaintiff fell contained only a handrail along the left side and that this lack of a second handrail violated section 67—10.3 of the Chicago Building Code. Under this section, all stairways are required to have dual railings except where the stairway is less than 44 inches wide. The record reflects that defendant's stairway was wider than 44 inches.

At the close of the trial, the trial court made the following ruling as to the absence of the second handrail:

> "There is also a finding that there was no handrail on there, which is not a violation, per se, but if there had been a handrail on there, the plaintiff could have come out of the door, grasped the handrail there and maybe not have taken the two steps.
>
> We don't know what the plaintiff would do, but if there had been a handrail on the building, he could have used the handrail."

■■ ■ In Illinois, a defendant's violation of a statute or ordinance designed for the protection of the public is *prima facie* evidence of negligence, and a plaintiff may recover if he shows the violation proximately caused plaintiff's injury. (*Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 209, 462 N.E.2d 753, 756.) Here, the evidence is insufficient to show any connection between plaintiff's fall and defendant's violation of the ordinance. First, no testimony in the record exists showing that plaintiff would have proceeded down the right side of the stairway had a right handrail been provided. Second, even if a right handrail existed, the testimony shows plaintiff may have slipped anyway. At the time of his fall, plaintiff was holding the left handrail, yet it did not prevent him from falling. Also, plaintiff testified that his right hand was holding a tin can, clipboard and route book at the time of his fall. Thus, a question exists as to whether he would have used the right handrail had one been provided. Third, even if plaintiff testified he would have taken a different path, no testimony exists to show that plaintiff's path would have taken him

around the ice upon which he fell. In short, the conclusion that a connection exists between plaintiff's fall and the violation of the ordinance is mere conjecture. Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause may only be established when there is a reasonable certainty that defendant's acts caused the injury. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331.) Thus, the trial court's finding that the absence of a second handrail proximately caused plaintiff's fall was not supported by the evidence.

For the foregoing reasons, the judgment entered in favor of plaintiff is reversed and the case is remanded for entry of judgment in favor of defendant.

Reversed and remanded.

CAMPBELL and MANNING, JJ., concur.