(No. 70969.

BERNARD KALATA, Appellant, v. ANHEUSER-
BUSCH COMPANIES, INC., Appellee.

*Opinion filed October 17, 1991.*

426

Grotefeld, Johnson, Pekala & Durkin, Chtd., of Chicago (Frank E. Glowacki and Carol M. Douglas, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe and Lynn D. Dowd, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, plaintiff, Bernard Kalata (Kalata), was awarded damages for personal injuries sustained when he fell on a snow- and ice-covered stairway while exiting a warehouse owned by defendant, Anheuser-Busch Companies, Inc. (Anheuser-Busch). The appellate court reversed. (204 Ill. App. 3d 351.) We granted plaintiff leave to appeal (134 Ill. 2d R. 315). We reverse.

## BACKGROUND

Kalata filed his original complaint on December 6, 1984. Kalata's second-amended complaint, filed on April 20, 1989, is the most recently filed complaint and the complaint pertinent to this appeal. The second-amended complaint alleges that Anheuser-Busch negligently failed to provide a handrail on both sides of the stairway, in violation of the City of Chicago building code (Chicago Municipal Code §§67—10.3(a)(1), 78—5 (1984)). In addition, Kalata alleges that Anheuser-Busch negligently approved and accepted the warehouse building with a defective design and allowed the building to be in a defective condition in that the gutters overflowed onto the stairway below; the top landing of the stairway was pitched so that it retained water dropping from the gutter above, causing an unnatural accumulation of ice and snow; and the building lacked a canopy over the stairway to prevent an unnatural accumulation.

In holding for plaintiff, the trial court found that there was a flow of water from the roof or gutters onto the stairwell and that if there had been a right-hand railing, plaintiff could have grasped that handrail and not taken the steps toward the left side of the stairway which led to his fall. The court found damages of $361,217.41, and reduced the damage amount for plaintiff's contributory negligence, awarding plaintiff $180,680.70.

The appellate court reversed. The appellate court held that plaintiff failed to present direct evidence, or sufficient circumstantial evidence, of a design deficiency in the gutters or roof which caused the allegedly unnatural accumulation of ice on the landing. Further, the court held that plaintiff failed to prove that the landing was defective. In addition, the appellate court held that the evidence fails to show "any connection" between plaintiff's fall and defendant's violation of the handrail ordinance.

## EVIDENCE AT TRIAL

Kalata testified at trial that on June 9, 1984, he was working as a driver/salesman for Hometown Distributing Company. He worked out of the warehouse owned by Anheuser-Busch, located at 4841 South California Avenue in Chicago. The stairway on which plaintiff fell is located on the north side of the warehouse building. The right-hand side of the stairway, as a person exits the building, runs alongside and touches the building, and the left-hand side faces the parking lot. There was a hand railing on the left side of the stairway but not on the right.

Plaintiff left home around 6:15 a.m. and drove approximately 11 miles to the warehouse. The temperature was below freezing and street conditions were slippery. Plaintiff parked his car in the lot to the east of the ware-

house, and as he walked to the building, he slipped in the parking lot, but caught himself and did not fall. He ascended the east stairway, which was slippery. He entered the building, walked through the warehouse to the drivers' room and collected receipts and other materials for his route for the day. He met his helper, Robert Ubriaco, in the building. Plaintiff and Ubriaco proceeded to exit the building to begin their route.

Plaintiff stated that the north door opened outward, by means of a push-bar across the inside. Ubriaco exited first, and plaintiff followed. Plaintiff was carrying in his right hand what he called a tin can, which was an aluminum cover for his route receipts. Plaintiff was wearing a work uniform, including a winter jacket. He also wore heavy insulated boots. Plaintiff weighed 245 pounds, as he had for 20 years before, and stands five feet, seven inches tall.

Ubriaco walked down the stairs, going over to the left-hand side of the stairway to hold the left handrail because, plaintiff stated, there was no railing on the right side. After Ubriaco went down one, two or three stairs, plaintiff followed. Plaintiff's leg slipped from under him as he stepped on the snow and ice on top of the stoop. Plaintiff fell down the stairway, "bouncing off" Ubriaco and landing on the pavement below the last step. Plaintiff suffered injuries to his knees and other injuries.

Plaintiff testified that there was "snow on top of ice" on the stoop, and there was snow covering the stairs with ice along one side of the stairway leaking toward the building. Plaintiff further testified that the ice came from the gutter, since water came down off of the gutter and roof any time there was a heavy precipitation. There were icicles along most of the wall of the building during the winter. Plaintiff never talked to the president of Hometown Distributing Company about the water accu-

mulating in the area. Plaintiff stated, however, that he did not know of the condition of the stoop until he saw the stoop as he exited the building.

On cross-examination, plaintiff testified that he used the north stairway year-round for 8 to 10 years prior to the date of his fall. Plaintiff believed that it was snowing while he was on his way to work the morning of the accident. It had snowed the night before. Plaintiff was carrying a clipboard and route book in addition to the tin can when he fell. The tin can measures approximately 1½ inches wide and 15 inches square. Plaintiff stated that after he came out of the door, he took two steps on the top landing toward the left-hand side of the stoop when he fell. He reached for and was holding onto the left-hand railing as he was falling.

Robert Ubriaco testified that he had worked as a truck helper since 1973 and was working with plaintiff for Hometown Distributing Company on the day of the accident. Ubriaco stated that just prior to the accident, he and plaintiff were leaving the building to go to their truck. Ubriaco exited first, opening the door and stepping onto the stoop. He slipped and started to fall, but grabbed the left handrail with both hands while he was on the stoop, or landing, and then proceeded to reach the bottom of the stairs. He turned to warn Kalata to be careful, but Kalata was already falling. Kalata fell up against Ubriaco at the bottom of the stairs.

Ubriaco stated that there was ice on the top of the stoop covered with snow, and there was ice on some of the stairs covered with snow. It had snowed the night before. Ubriaco stated that the ice came from the roof over the gutters. During winter when the temperature was at or below freezing, ice would accumulate on the side of the building and icicles would hang over the rain gutter. Ubriaco stated that in late 1983 or early 1984, he complained to his union steward of water and icicles on

the side of the building. On cross-examination, Ubriaco stated that plaintiff was carrying the tin can, the clipboard, and the route book in his right hand. The three things measured approximately 15 by 15 inches by 2½ to 3 inches thick.

John Gliottoni, a general contractor who worked in the construction industry for 35 years, testified, as plaintiff's expert, regarding the condition of the stairway. Gliottoni examined the stairway and determined that the top landing had no pitch, or slant, and therefore water, snow, ice, and sleet would accumulate there. Gliottoni stated that based upon reasonable construction standards the stoop should have a pitch of one-quarter inch per foot. The stoop measured 48 inches wide, and therefore should be pitched one inch away from the building. Gliottoni stated his opinion based upon a reasonable degree of construction standards that the stoop was not in a safe condition because of the lack of a pitch and the absence of a handrail on the south (right-hand) side.

On cross-examination, Gliottoni stated that he did not check the gutters to see that they were installed and pitched properly. Gliottoni stated that there was nothing to prevent water or snow from coming over the gutters because the gutters were probably designed properly for normal rain and snow fall. A canopy would allow the snow and water to slide over the gutter in a heavy rain or snow storm. Gliottoni admitted that when he inspected the stairway, there were no accumulations of snow, ice, or water on the stairway. Gliottoni was unaware of requirements of the Chicago building code for the pitch of a stairway.

Plaintiff introduced into evidence a certified climatological report for the Chicago area for December 1983 and January 1984. The report showed that for the first nine days of January, the temperature was below 30 degrees Fahrenheit. Several days before the accident,

there was sunshine. There was an accumulation of snow or "ice pellets" on January 1 of 3.1 inches; 0.5 inches on January 8; and 0.7 inches on January 9. The precipitation was 3.6 inches on December 21, and 3.1 inches on December 28.

The court allowed into evidence section 67—10.3 of the City of Chicago ordinance, which provides that stairways must have handrailings on both sides, except stairs that are less than 44 inches wide may have a handrail on one side only. Chicago Municipal Code §67—10.3 (1984).

Anheuser-Busch called David Collins, a mechanical engineer with six months of experience in the construction industry, to testify as its expert regarding the condition of the stairway. Collins stated his opinion to a reasonable degree of engineering certainty that the stairs are safe for egress from the building. Collins stated that the stairs are adequately level, well lit, and there is a handrail provided.

Collins reviewed Gliottoni's deposition testimony, and disagreed with Gliottoni's conclusions. Collins stated that even with a one-inch slope, snow falling upon the stairs would not slide off sufficiently because there is a coefficient of friction between snow and concrete, and the coefficient varies as a function of temperature and other factors. With the below-freezing temperature at the time of the accident, the minimal coefficient of friction would require a slope of the stairs well beyond what would be considered safe for stairs in normal usage. Therefore, the proposed slope of the stairs would do nothing to reduce the hazard produced by snow upon the stairs.

James Taylor, a partner and president of Hometown Distributing Company, testified that he had no personal awareness of a defect or problem regarding the condition of the north stairway. He personally received no complaints regarding water overflowing from the gutter or that anyone besides plaintiff fell on the stairway.

## DISCUSSION

Plaintiff raises the following issues: (1) whether the appellate court improperly disturbed the trial court's finding that plaintiff's injuries were proximately caused by the absence of a second handrail; and (2) whether the appellate court improperly refused to consider the pitch of the stairway landing to be a defect which could result in liability to the defendant.

In response, Anheuser-Busch raises several additional contentions. First, defendant owed no duty to protect plaintiff from the natural accumulation of ice and snow on the stairway or a defect of which defendant had no notice. In addition, plaintiff failed to prove that the allegedly defective pitch resulted in an unnatural accumulation of snow and ice, and the allegedly defective pitch is not, as a matter of law, a defect upon which liability can be predicated. Moreover, plaintiff failed to prove that defendant was negligent for not providing a second handrail.

In reply, Kalata asserts that the trial court's finding that the absence of a second handrail proximately caused his injury is sufficiently supported by the record. In addition, the trial court properly found that the defective landing combined with other factors to cause an unnatural accumulation of ice which proximately caused plaintiff's injuries.

In a bench trial, it is the function of the trial judge to weigh the evidence and make findings of fact. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 124.) In cases where the evidence is close, such as the instant case, where findings of fact must be determined from the credibility of the witnesses, a court of review will defer to the trial court's factual findings unless they are against the manifest weight of the evidence. (*Dolins*, 107 Ill. 2d at 123-24; *Cosmopolitan National Bank v. County*

*of Cook* (1984), 103 Ill. 2d 302, 318-19.) The court on review must not substitute its judgment for that of the trier of fact. *Cosmopolitan National Bank*, 103 Ill. 2d at 314-15.

Plaintiff first asserts that the trial court's finding that his injuries were proximately caused by the absence of a second handrail was sufficiently supported by the evidence. Plaintiff's complaint alleges that the lack of a second, right-hand railing violates sections 67—10.3(a)(1) and 78—5 of the City of Chicago building code (Chicago Municipal Code §§67—10.3(a)(1), 78—5 (1984)). Section 67—10.3(a)(1) provides:

> "67—10.3 (a) All stairways shall have walls, railings or guards on both sides and shall have handrails on both sides except as follows:
>
> (1) Stairs less than forty-four inches wide may have a handrail on one side only." (Chicago Municipal Code §67—10.3(a)(1) (1984).)

Section 78—5 provides that existing buildings must comply with all applicable "exit requirements" of the building code. Chicago Municipal Code §78—5 (1984).

The parties do not dispute that the stairway on which plaintiff fell measures more than 44 inches wide. Plaintiff's expert testified that the stairway measures 48 inches wide. Thus, under section 67—10.3(a)(1), the stairway was required to have handrails on both sides. The lack of a handrail on the right-hand side of the stairway accordingly constitutes a violation of the ordinance.

A violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence. (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 219.) A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suf-

fered. (*Barthel*, 74 Ill. 2d at 219-20; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 76-79.) The violation does not constitute negligence *per se*, however, and therefore the defendant may prevail by showing that he acted reasonably under the circumstances. *Barthel*, 74 Ill. 2d at 220; *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 389-90.

Anheuser-Busch does not dispute that plaintiff and the kind of injury he suffered come within the purview of the ordinance. Nevertheless, we will discuss this issue briefly. We find that the ordinance is a public safety measure. Section 67—10.3(a)(1) sets forth requirements for stairways generally that handrails be provided on each side, and that only on relatively narrow stairways may a handrail be provided on only one side. It is reasonable to conclude that a purpose of the ordinance is to prevent injuries as a result of falls down a stairway, such as Kalata's fall in the instant case. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417-21. See also *Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 182-85; *Petrauskas v. Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 830.) Further, plaintiff, a regular user of the stairway, comes within the class of persons which the ordinance is designed to protect.

The parties dispute, however, whether the evidence is sufficient to support the trial court's finding that the absence of the right handrail proximately caused Kalata's injuries. This court in *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, cites *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, for the rule regarding proximate cause:

> " 'The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted

from his act. [Citations.] \*\*\* The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. [Citations.] What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence.' " *Davis,* 64 Ill. 2d at 394-95, quoting *Neering,* 383 Ill. at 380-81.

Kalata contends that a preponderance of the evidence shows that the absence of the handrail was a proximate cause of his injury. For instance, Kalata testified that Ubriaco, exiting before him, used the left handrail because there was no right handrail. Further, plaintiff testified that he took two steps across the stoop in order to reach the left handrail, and that his fall occurred as he was taking those steps. Plaintiff asserts that if a right handrail had been provided, he would not have crossed the icy stoop to reach the left handrail.

Plaintiff contends that the appellate court improperly held that no testimony demonstrated that plaintiff would have used a right handrail had one been provided. The appellate court also concluded that since the left handrail did not prevent the plaintiff from slipping, a right handrail likewise would have been ineffective in stopping plaintiff's fall. Kalata asserts that this conclusion ignores his testimony that he fell while he was in his stride. In addition, plaintiff argues that the appellate court improperly placed a burden on him to show that a new route would have spared him of the ice patch on which he fell. Finally, plaintiff contends that the appellate court failed to consider that the items plaintiff carried in his right hand could easily be shifted to his left hand if a right-hand railing had been provided.

Anheuser-Busch responds that plaintiff failed to prove that the absence of a second handrail proximately caused his injuries. Defendant contends that the trial

court admitted that the effect of the second handrail was speculative when it stated:

"We don't know what the plaintiff would [have done], but if there had been a handrail on the building, he could have used the handrail."

Defendant contends that the appellate court properly determined that proximate cause could not be based upon speculation or conjecture, and that there is no evidence showing that plaintiff would have proceeded down the right side of the stairway had a right handrail been available. In addition, plaintiff testified that he fell notwithstanding his holding onto the left handrail, and accordingly, a right handrail similarly would not prevent his fall. Further, plaintiff's testimony that water was dripping onto the stairway near the building indicates that there was ice also on the right-hand side of the stairway, on which plaintiff may have fallen if he proceeded along the right side of the stairway.

In reply, plaintiff asserts that the trial judge was not required to make specific findings of fact, citing *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938. Plaintiff asserts that the trial judge's comments quoted by defendant are not inconsistent with a finding for plaintiff or the trial judge's conclusion that plaintiff proved his case by a preponderance of the evidence. Plaintiff points to the trial court's statement:

"[I]f there had been a handrail on there, the plaintiff could have come out of the door, grasped the handrail there and maybe not have taken the two steps."

Liability may not be based upon speculation, imagination, or mere conjecture. (*Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 60.) Where there is direct evidence or circumstantial evidence from which reasonable inferences may be made to support each element of the cause of action, then the issue of liability is

properly left to the jury. *Tiffin*, 18 Ill. 2d at 60; *Walsh v. Finley* (1972), 51 Ill. 2d 174, 176.

We find that the evidence sufficiently supports the trial court's finding that the absence of a right handrail was a proximate cause of plaintiff's injuries. First, plaintiff testified that he believed just prior to his fall that Ubriaco walked to the left-hand side of the stairway in order to grab the left-hand railing since there was no right-hand railing. In addition, plaintiff testified that he fell as he was taking two steps toward the left-hand side of the landing. The trial court reasonably inferred from this testimony that the absence of a right handrail resulted in plaintiff's taking those two steps which led to his fall, without having the benefit of the support of the left handrail until he was already falling.

Further, we agree with plaintiff that the trial court could reasonably infer that the items plaintiff carried in his right hand could easily be shifted to his left hand if a right handrail was provided. The evidence showed that the size of the items enabled plaintiff to carry them in one hand. There is nothing in the record to suggest that plaintiff could not have shifted them to his left hand. We reject Anheuser-Busch's assertion that the trial court's statement that "[w]e can't know what the plaintiff would do" if a right-hand rail had been available is inconsistent with the verdict. The trial court's statement merely acknowledges the court's inherent inability to recreate all of the circumstances of a prior occurrence. We find that plaintiff's injuries are of a type which were reasonably foreseeable.

The evidence also shows that there was snow and ice on the landing and on the stairs. Without considering whether the accumulation of snow and ice was unnatural or natural, we find that the presence of ice and snow on the stairway was a condition foreseeable to defendant, particularly in view of typical weather patterns for a

mid-winter morning in Chicago. Accordingly, the presence of ice and snow does not break the causal connection between the violation of the ordinance and plaintiff's injuries. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 394-95.

The parties presented expert testimony regarding the safety of the stairway. Plaintiff's expert testified that the absence of a second handrail made the stairway unsafe. Defendant's expert testified that the stairway was safe for egress from the building. Where testimony is conflicting, it is the duty of the trier of fact to weigh the testimony and consider it in view of all of the evidence. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120.) Our review of the record indicates that the trial court could reasonably rely upon the testimony of plaintiff's expert, along with the other evidence of record, to conclude that the absence of a right-hand railing resulted in the stairway's being in an unsafe condition and proximately causing plaintiff's injuries. We find no basis to disturb the trial court's findings.

Further, we agree with plaintiff that he was not required to show that an alternate route would have spared him from the ice and snow on which he fell. The evidence was sufficient to support the trial court's reasonable inference that the absence of a handrail, given the generally icy and snowy conditions of the stairway and the parking lot and streets, was a proximate cause of plaintiff's injuries. In addition, defendant failed to show that it acted reasonably under the circumstances so as to defeat plaintiff's showing that the absence of the right handrail was a proximate cause of his injuries. See *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220.

In view of our holding that the evidence sufficiently supports the trial court's finding that the absence of a right handrail, which constitutes a violation of the local

ordinance, proximately caused plaintiff's injuries, we need not address the second issue which plaintiff raises.

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the trial court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*