**Gretchen D. CUYLER, Special Administrator of the Estate of Christian Cuyler, deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 98 C 3786.

United States District Court,
N.D. Illinois,
Eastern Division.

March 9, 1999.

Randall F. Peters, Randall F. Peters & Associates, Chicago, IL, William Lawrence Suhadolnik, Simonian & Suhadolnik, Waukegan, IL, for plaintiff.

Matthew David Tanner, Asst. U.S. Atty., United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Gretchen D. Cuyler ("Cuyler"), Special Administrator of the Estate of Christian Cuyler ("Decedent"), deceased, filed a Complaint against the United States of America ("United States") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The United States presently moves to dismiss Cuyler's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the motion.

## BACKGROUND [1]

For "a long period of time prior to September 1, 1994," Edwena D. Higgs ("Higgs") allegedly operated and provided unauthorized, officially unapproved and unlicenced day care and babysitting ser-

vices. (Cmplt. ¶ 6.) Higgs, a dependant of an enlisted individual with the Navy, allegedly provided these services in officially assigned United States Naval Housing in Great Lakes, Illinois "with the actual and/or constructive knowledge of the United States Navy." (Id.)

On or about August 1, 1994 through August 4, 1994, Higgs babysat Antonious Norman ("Baby Norman"), the sixteen month old son of an active Navy enlisted man, Anthony Norman ("Norman"). Cuyler alleges that, during the babysitting, Higgs physically beat and abused Baby Norman, causing him to sustain certain external and readily-apparent visible injuries. When Norman observed his son's injuries after picking him up from Higgs' residence on August 4, 1994, Norman took his son to the Great Lakes Naval Hospital for emergency medical care and treatment.

At the hospital, the hospital personnel who examined and treated Baby Norman, including certain nurses and doctors, were allegedly advised of the suspected beating committed upon the baby by Higgs at her base housing. The various medical personnel, including nurses and attending physicians, allegedly advised Norman that "they would, pursuant to standing orders, procedures and protocol, report and undertake an investigation of his report and suspicions of physical abuse and the beating of his son by ... Higgs while he was being provided babysitting and day care services at the ... base housing." (Id. ¶ 10.) Cuyler's Complaint alleges, however, that Higgs' alleged abuse of Baby Norman went unreported.

On September 1, 1994, Higgs babysat the Decedent at her Navy base housing. Allegedly, Higgs negligently and/or intentionally physically abused the Decedent, resulting in the Decedent sustaining personal injuries which ultimately resulted in his death later in the day on September 1, 1994.

---

1. The Court has taken these facts from the well-pleaded allegations contained in Cuyler's Complaint which, for purposes of the United States' motion to dismiss, are deemed true. See e.g., Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.1996).

Cuyler's Complaint alleges that the United States had a duty, through its agents, to provide safety and security for the foreseeable and intended Navy personnel and dependents, including the Decedent. Cuyler alleges that the United States breached that duty by:

- negligently and carelessly fail[ing] to follow "NAVHOSPGLAKESINST 6320.57C" in direct contradiction and contravention of standing orders, regulations and protocol of the Department of Defense and Department of Navy;

- negligently and carelessly fail[ing] to advise the Nurse of the Day, the Medical Officer of the Day or Family Advocacy Representative of the suspected severe physical abuse perpetrated by ... Higgs on [Baby] Norman, while said child was in her exclusive care, custody and control on or about August 4, 1994 and the days preceding that date, in violation of NAVHOSP-GLAKESINST 6320 .57C and/or other orders, regulations or protocol;

- negligently and carelessly fail[ing] to advise or report procedures of all suspected child abuse/neglect to the State of Illinois Department of Children and Family Services ("DCFS") on the 24 hour hotline, as required by NAVHOSPGLAKESINST 6320.57C and/or other orders, regulations, or protocol; and

- were otherwise careless and negligent in the administration and operation of the Great Lakes Naval Hospital.

(*Id.* ¶ 13.) Cuyler alleges that the above breaches of duty by agents of the United States were the proximate cause of the Decedent's injuries and subsequent death.

On or about August 26, 1996, Cuyler presented her claim for personal injuries to the Commanding Officer of the Naval Legal Services Officer, Great Lakes, Illinois. On December 19, 1997, Cuyler's claim was denied by the Commanding Officer of the Judge Advocate General's Corps, Navy Legal Service Office Central in Pensacola, Florida.

On June 18, 1998, Cuyler filed her Complaint in this Court, seeking compensatory damages for wrongful death (Count I) and survival (Count II). The United States now moves to dismiss Cuyler's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), asserting that Cuyler's Complaint fails to state a claim upon which relief can be granted.

## DISCUSSION

### I. *Standards for Motion to Dismiss*

When reviewing a motion to dismiss, the Court examines the sufficiency of the complaint rather than the merits of the lawsuit. *Triad Assoc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence that supports the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss will be granted only if the Court finds that the plaintiff can put forth no set of facts that would entitle her to relief. *See Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir.1993); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the Court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well-pleaded facts are true. *See Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.1993).

### II *Liability under the Federal Tort Claims Act*

█ The Federal Tort Claims Act ("FTCA") grants the federal district courts jurisdiction over a category of claims for which the United States has waived its sovereign immunity and rendered itself liable. *See* 28 U.S.C. § 1346(b); *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Under the FTCA, the government is liable for the negligent conduct of an employee "while acting within the scope of his office or employment" under circumstances where "a private person[ ] would be liable to the claimant in accordance with the law

of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

■ The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *Meyer,* 510 U.S. at 478, 114 S.Ct. 996. As such, "for liability to arise under the FTCA, the plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and the allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." *Bergquist v. United States,* 849 F.Supp. 1221, 1232 (N.D.Ill.1994) (quoting *Chen v. United States,* 854 F.2d 622, 626 (2d Cir. 1988)).

■ As an initial matter, Cuyler asserts that her allegation that the government violated particular Naval regulations, by itself, supports a negligence claim. (Pl. Resp. at 2.) The Court disagrees. "Simply alleging violations of the Federal Constitution, federal statutes or federal regulations does not satisfy the FTCA's 'law of the place' requirement." *Bergquist,* 849 F.Supp. at 1232. "The negligent performance of duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but only if there are analogous duties under local tort law." *Id.* (citing *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157–58 (D.C.Cir. 1985)). Thus, for Cuyler's action to be cognizable under the FTCA, Illinois law— the law of the place where the alleged negligent acts occurred—must recognize a claim for negligence under the circumstances here.

In answering the above issue, there are some undisputed matters. First, Illinois, like many states, has enacted a statute— the Abused and Neglected Child Report-ing Act (the "Child Abuse Reporting Act")—mandating that medical caregivers, teachers and designated others promptly report signs of child abuse to the appropriate authorities. *See* 325 ILCS 5/1 *et seq.* Second, the Child Abuse Reporting Act provides for criminal penalties (or, in the case of physicians, professional discipline) for willful failure to report. *See* 325 ILCS 5/4.02. Third, no Illinois court has expressly addressed whether, in light of the Illinois reporting statute or otherwise, there is a private cause of action based on a failure to report suspected child abuse.

In its motion to dismiss, the United States asserts that Illinois courts would not recognize a civil cause of action under the circumstances here. As support, the government directs this Court to precedent from other states which have declined to create a private cause of action in similar situations involving state reporting statutes. *See Perry v. S.N.,* 973 S.W.2d 301, 309 (Tex.1998); *Letlow v. Evans,* 857 F.Supp. 676, 678 (W.D.Mo.1994); *Vance v. T.R.C.,* 229 Ga.App. 608, 494 S.E.2d 714, 716–17 (1997); *J.A.W. v. Roberts,* 627 N.E.2d 802, 813 (Ind.Ct.App.1994). The government further asserts that even if Illinois recognized a private cause of action for failure to report, extending the government's duty to a child who is not the same child whose abuse it failed to report would be unprecedented.

■ For starters, this Court need not address whether the Illinois Child Abuse Reporting Act affords an implied private cause of action. Cuyler's Complaint does not seek relief based on any such implied private cause of action under the Child Abuse Reporting Act, but instead asserts that the government's actions constituted "negligence." As such, the Court turns to Illinois law to determine whether Cuyler's Complaint states a negligence claim.[2]

---

**2.** A federal district court considering state law must attempt to predict how the state supreme court would decide the issue presented. *See, e.g., Allen v. Transamerica Ins. Co.,* 115 F.3d 1305, 1309 (7th Cir.1997). "Although the decision of a state's intermediate court is not a conclusive interpretation of state law in the same sense as a decision of the state's highest court, it illuminates the meaning of state law and should be followed 'unless there are persuasive indications that the [state's] Supreme Court would decide the issue differently.'" *Burns Philp Food, Inc. v.*

■ As Cuyler asserts (*see* Pl.Resp. at 2), the Illinois Supreme Court has repeatedly held that "the violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence." *Noyola v. Board of Educ. of the City of Chicago,* 179 Ill.2d 121, 129, 227 Ill.Dec. 744, 688 N.E.2d 81, 84 (1997) (citing cases); *Kalata v. Anheuser–Busch Cos.,* 144 Ill.2d 425, 434, 163 Ill.Dec. 502, 581 N.E.2d 656, 661 (1991). *See also Enis v. Ba–Call Bldg. Corp.,* 639 F.2d 359, 362 (7th Cir.1980). The Illinois Supreme Court has elaborated on this principle as follows:

> Underlying these cases is the notion that statutes and ordinances designed to protect human life or property establish the standard of conduct required of a reasonable person. In other words, they fix the measure of legal duty. Where a defendant violates one of these statutes or ordinances, a plaintiff who belongs to the class intended to be protected by that statute or ordinance and whose injury is of the type the statute or ordinance was intended to protect against may recover upon establishing that the defendant's violation proximately caused plaintiff's injury.

*Noyola,* 179 Ill.2d at 129–30, 227 Ill.Dec. 744, 688 N.E.2d at 84–85 (citations omitted).

Cuyler's allegations satisfy a claim for negligence based on a violation of an Illinois public safety statute. First, there is no doubt that the Illinois legislature intended the Illinois Child Abuse Reporting Statute to be a "public safety statute." [3] The application section of the statute states:

> The Illinois Department of Children and Family Services shall, upon receiving reports made under this Act, protect the best interests of the child, offer protective services in order to prevent any further harm to the child and to other children in the same environment or family ... and protect the health and safety of children in all situations in which they are vulnerable to child abuse and neglect. Recognizing that children also can be abused and neglected while living in public or private residential agencies or institutions meant to serve them, while attending day care centers or schools, or when in contact with adults who are responsible for the welfare of the child at that time, this Act also provides for the reporting and investigation of child abuse and neglect in such instances.

325 ILCS 5/2. *See also Pesce v. J. Sterling Morton High Sch.,* 830 F.2d 789, 798 (7th Cir.1987) (recognizing that "Illinois ... has adopted measures seeking to uncover instances of child abuse in order to protect children from subsequent abuse"). The protection sought by the Illinois Child Abuse Reporting Act clearly compares with other statutes that the Illinois Supreme Court has found to be "public safety statutes." *See, e.g., Kalata,* 144 Ill.2d at 435, 163 Ill.Dec. 502, 581 N.E.2d at 661 (finding that city ordinance setting handrail requirements for stairway was a public safety measure); *French v. City of Springfield,* 65 Ill.2d 74, 79, 2 Ill.Dec. 271, 357 N.E.2d 438, 440 (1976) (finding that city ordinance which required a permit to be issued before barricades could be stationed on the street was a public safety measure).

Moreover, considering the clear intent of the statute, there can be no doubt that the Decedent was an intended beneficiary of the Child Abuse Reporting Act. As noted

*Cavalea Continental Freight, Inc.,* 135 F.3d 526, 528 (7th Cir.1998) (quoting *Allen,* 115 F.3d at 1309).

**3.** In ascertaining legislative intent, a court first considers the language of the statute itself, as that is the best indication of the drafters' intent. *See Moore v. Lumpkin,* 258 Ill.App.3d 980, 989, 196 Ill.Dec. 817, 824, 630 N.E.2d 982, 989 (1st Dist.1994). Where the legislature's intent can be determined by looking to the language of the statute, giving the words their ordinary meanings unless otherwise indicated, that intent must be given effect without resort to other means of statutory construction. *Id.* The statute should be read as a whole, considering each relevant section as it relates to other sections. *Id.*

above, the Child Abuse Reporting Act was enacted, in part, to "offer protective services in order to prevent any further harm to the child and to other children in the same environment or family ... and protect the health and safety of children in all situations in which they are vulnerable to child abuse and neglect." 325 ILCS 5/2. Here, the Decedent easily falls within the intended beneficiaries of the statute—he was a member of a particular, identifiable group of children who were being babysat, allegedly with the knowledge of the government, by an alleged child abuser.[4] It is equally clear that the Decedent's injury—his death, allegedly due to abuse—was "the type of injury the statute ... was intended to protect against." Under the circumstances here, the Court agrees with Cuyler that her allegations state a claim of negligence upon which relief may be granted.[5]

The Court finds the government's assertion that "the legal duty plaintiff would impose on the Navy ... knows no bounds, and would tear the notion of duty from its moorings" to be mistaken. (*See* Def. Reply at 7.) As noted above, a violation of a public safety statute such as the Child Abuse Reporting Act "fix[es] the measure of legal duty." *See Noyola,* 179 Ill.2d at 130, 227 Ill.Dec. 744, 688 N.E.2d at 85. Here, the act expressly stated its intention to "prevent any further harm to the

[abused] child *and to other children in the same environment* or family." 325 ILCS 5.2 (emphasis added). Therefore, instead of "know[ing] no bounds," the legal duty asserted by Cuyler fits well within the expressly intended boundaries of the Illinois statute.[6]

In sum, the Illinois Supreme Court has made it clear that "[w]here a defendant violates [a public safety statute], a plaintiff who belongs to the class intended to be protected by that statute ... and whose injury is of the type the statute ... was intended to protect against may recover upon establishing that the defendant's violation proximately caused plaintiff's injury." *Noyola,* 179 Ill.2d at 130, 227 Ill.Dec. 744, 688 N.E.2d at 85. *See also Calloway v. Kinkelaar,* 168 Ill.2d 312, 319–20, 213 Ill.Dec. 675, 659 N.E.2d 1322, 1326 (1995). Because Cuyler's allegations state a claim for negligence based upon a violation of a public safety statute, the government's motion to dismiss is denied.

## CONCLUSION

For the above reasons, the United States' motion to dismiss is denied.

---

4. "Child" is defined in the Illinois Child Abuse Reporting Act as "any person under the age of 18, unless legal emancipated by reasons of marriage or entry into a branch of the United States armed services." 325 ILCS 5/3. Although Cuyler's Complaint does not state the Decedent's age at the time of his death, the Court infers from the surrounding facts in the Complaint that he meets the definition of "child" under the Child Abuse Reporting Act.

5. Cuyler additionally asserted that certain Illinois courts have already recognized a common law tort claim against mandated reporters who failed to report suspected abuse. (Pl. Resp. at 3–4 (*citing Dupree v. County of Cook,* 287 Ill.App.3d 135, 222 Ill.Dec. 504, 677 N.E.2d 1303 (1st Dist.1997); *Doe v. Montessori School of Lake Forest,* 287 Ill.App.3d 289, 223 Ill.Dec. 74, 678 N.E.2d 1082 (2d Dist.

1997).)) The Court's review of the cases cited by Cuyler demonstrates that they did not expressly consider whether civil actions may be based on the Child Abuse Reporting Act; nevertheless, the courts did appear to tacitly acknowledge the possibility for such civil actions.

6. Because the Illinois Child Abuse Reporting Act contains the express intention of the Illinois legislature to prevent harm to other children in the same environment as abused children, the Court finds that this case is distinguishable from the decisions of other jurisdictions cited by the government considering different state reporting statutes. *See, e.g., Curran v. Walsh Jesuit High Sch.,* 99 Ohio App.3d 696, 651 N.E.2d 1028 (1995); *Marcelletti v. Bathani,* 198 Mich.App. 655, 500 N.W.2d 124 (1993).