BOARD OF EDUCATION, Community Consolidated School District No. 15, Cook County, Plaintiff-Appellee and Cross-Appellant, v. THOMAS L. ARMSTEAD, State Fire Marshal, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (3rd Division)    No. 1—92—4145

Opinion filed April 17, 1996.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellants.

Richard C. Robin, Paul A. Millichap, and Charlotte M. Gibberman, all of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, the Board of Education, Community Consolidated School District No. 15, brought an action for administrative review in the circuit court of Cook County against defendants, Thomas L. Armstead, in his capacity as the Illinois State Fire Marshal, and the Office of the State Fire Marshal (hereinafter OSFM), to register plaintiff's nine underground storage tanks in accordance with the Underground Storage Tank program provision of the Gasoline Storage Act (Act) (430 ILCS 15/4(b)(1)(C) (West 1994)). In its complaint, plaintiff sought a writ of *mandamus* and injunctive relief. Plaintiff moved for summary judgment, which the circuit court granted and ordered the OSFM to register all nine underground storage tanks (UST). It is from this order that defendants now appeal. In addition, plaintiff filed a cross-appeal from a circuit court order denying its

motion for attorney fees. Jurisdiction is vested in this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm in part and reverse in part.

## FACTUAL BACKGROUND

The relevant facts are as follows. Plaintiff owned property where nine 500-gallon underground heating oil tanks were situated. In 1964, plaintiff converted from heating by oil to natural gas. Thus, in 1972, it drained as much of the remaining heating oil as possible from the tanks and filled them with sand.

■ In 1987, the Illinois General Assembly enacted the Gasoline Storage Act (hereinafter Act) (Ill. Rev. Stat. 1987, ch. 127¹/₂, par. 153 *et seq.*). The Act requires an "owner of an underground storage tank, which at any time between January 1, 1974, and [July 11, 1990,] contained petroleum or petroleum products or hazardous substances" to register with the OSFM (Ill. Rev. Stat. 1987, ch. 127¹/₂, par. 156(b)(1)). The Act had initially paralleled the 1984 federal regulatory programs for underground storage tanks. See 42 U.S.C. § 6991 *et seq.* (1988). The Act did not include heating oil tanks.

In March of 1990, during the construction of a new school building, plaintiff discovered that heating oil from five of nine tanks located on the property had leaked into the surrounding soil. Consequently, on April 23, 1990, plaintiff removed the five leaking tanks and notified the Emergency Services Disaster Agency of the situation. To date, plaintiff has spent $1.4 million to remove contaminated soil from its property.

On July 11, 1990, the Act was amended to specifically include heating oil tanks, provided those tanks had a capacity in excess of 1,100 gallons (Ill. Rev. Stat. 1991, ch. 127¹/₂, par. 156(b)(1)(B)). On January 24, 1991, plaintiff attempted to register all nine tanks, five of which were removed. The OSFM returned plaintiff's registration form and fees and stated that "the tanks in question are not registerable [*sic*] tanks since they are heating oil tanks 1,100 gallons or under and have not been in use at any time since January 1, 1974." On May 30, 1991, plaintiff filed a complaint against OSFM in the circuit court.

On September 6, 1991, the Act was amended again, this time eliminating the requirement that the tanks be greater than 1,100 gallons in capacity in order to be registered (430 ILCS 15/4(b)(1)(B) (West 1992)). The amendment provided that an "owner of a heating oil underground storage tank that at any time between January 1, 1974, and July 11, 1990, contained heating oil shall register the tank with the [OSFM]" (430 ILCS 15/4(b)(1)(B) (West 1992)). On October 2,

1991, plaintiff again submitted registration forms and fees to the OSFM to register the five removed tanks, as well as the four underground tanks still on school property. Shortly afterwards, the OSFM denied the applications and informed plaintiff that none of the nine underground storage tanks could be registered because the tanks were "last used prior to January 1, 1974."

On November 1, 1991, plaintiff filed an amended complaint in the circuit court against defendant, in his official capacity as State Fire Marshal, and the OSFM. Defendants filed a motion to dismiss, which the court denied. Later, on June 2, 1992, plaintiff filed a motion for summary judgment.

A few days later, both parties initiated a settlement, since the "in use" standard which the OSFM had used to deny plaintiff's registration was contrary to the Act. As part of the settlement, the OSFM agreed to register the nine underground storage tanks by July 1, 1992, in exchange for plaintiff's dismissal of its complaint with prejudice. On July 7, 1992, the OSFM revoked the registration of five of the tanks. Consequently, on August 5, 1992, plaintiff moved to enforce settlement. On the same day, plaintiff received an administrative order, which pronounced that the five tanks were not registrable. Plaintiff filed an emergency motion to stay administrative proceedings, which the court granted. Eventually, on September 11, 1992, the circuit court granted summary judgment in favor of plaintiff and ordered that the five removed tanks be registered.

The Act was amended again on September 15, 1992, to specifically exclude from coverage heating oil tanks "taken out of operation" before 1974 (430 ILCS 15/4(b)(1)(B) (West Supp. 1993); Pub. Act 87—1088, eff. September 15, 1992). Subsequently, the OSFM filed a motion for reconsideration, but it was denied by the circuit court. On November 17, 1992, the circuit court issued a new order in light of this amendment and plaintiff's motion for clarification. The order stated that all nine USTs are to be registered and confirmation given within 14 days of this order. Defendants appealed this order, as well as those of October 29, 1992, and September 11, 1992.

### ISSUES PRESENTED

On appeal, defendants argue that: (1) the circuit court lacked the authority to grant the *mandamus* or injunctive relief; (2) the 1992 amendments to the Act must be applied retroactively; and (3) the court erred in allowing registration of nonexistent tanks.

### OPINION

■ We begin our analysis by reviewing whether summary judgment was properly granted to plaintiff. Initially, we note that as the

relevant facts are undisputed, the issue of whether the five removed tanks are registrable under the Act is purely a question of law and, thus, subject to *de novo* review by this court. *City Suburban Electric Motors, Inc. v. Wagner*, 278 Ill. App. 3d 564, 566 (1996).

■ We now turn to the issue of whether the Administrative Review Law applies in this case and, if so, did the circuit court have the authority to grant *mandamus* and injunctive relief to plaintiff. The Act only provides that the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)) will govern in situations where a person has *violated* the rules and regulations for USTs (430 ILCS 15/2(3)(e) (West 1992)). The Act does not state that the Administrative Review Law applies to *denials* of registration applications of USTs. The Administrative Review Law governs judicial review only in those instances where it is adopted by express reference in the act creating or conferring jurisdiction upon the administrative agency involved. *Wilkins v. Department of Public Aid*, 51 Ill. 2d 88, 90, 280 N.E.2d 706, 708 (1972); *Philger, Inc. v. Department of Revenue*, 208 Ill. App. 3d 1066, 1069, 567 N.E.2d 773, 775 (1991). Accordingly, we cannot infer that the Administrative Review Law applies to the denials of registration.[1] Therefore, we conclude that the Administrative Review Law is not applicable to the case at bar.

■ We further conclude that although the circuit court did have authority to grant *mandamus* and injunctive relief, especially since administrative remedies were not readily available, *mandamus* and injunctive relief were not warranted in this instance. Both remedies are extraordinary and will be not be granted unless the petitioner can show a clear, affirmative right to the relief requested. See *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 470 N.E.2d 997 (1984); see also *Kramer v. City of Chicago*, 58 Ill. App. 3d 592, 598 (1978). The writ of *mandamus* is a summary writ which commands the officer to whom it is addressed to perform some duty which a petitioner is entitled of right to have performed and which the party owing the duty has failed to perform. *People ex rel. Council 19 of the American Federation of State, County & Municipal Employees v. Egan*, 52 Ill. App. 3d 1042, 1044 (1977). The petitioner in a *mandamus* action has the burden of establishing every material fact necessary to show the

---

[1]We do note, however, that on March 12, 1992, the OSFM permitted administrative appeals of administrative orders denying registration of underground storage tanks. See 41 Ill. Adm. Code §§ 170.810(a), 170.800 through 170.890 (1992). Since the effective date of this provision occurred after plaintiff filed its amended complaint, it cannot be applied to this case as it was not available at the time of injury.

plain duty of the respondent before a court will grant the relief requested. *Illinois Wood Energy Partners v. County of Cook*, 281 Ill. App. 3d 841, 852 (1995), citing *People ex rel. Council 19*, 52 Ill. App. 3d at 1045. To obtain injunctive relief, a petitioner must establish that his remedy at law is inadequate and he will suffer irreparable harm. As we discuss *infra*, plaintiff did not have a clear, affirmative right to have the five removed tanks registered. Consequently, the circuit court erred in entering summary judgment in favor of plaintiff because it did not satisfy the required elements for *mandamus* and injunctive relief.

Next, defendants contend that the 1992 statutory amendments (Pub. Act 87—1088, eff. September 15, 1992 (amending 430 ILCS 15/4(b)(1)(b) (West 1992))) to the Act should have been applied retroactively. Plaintiff responds that since the case was disposed of on September 11, 1992, and Public Act 87—1088 took effect on September 15, 1992, the former, rather than the amended, provision of section 4 controls this case. We disagree.

■ In a recently published opinion, *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), our supreme court articulated that the "vested rights" approach be used to determine the applicability of an amendment. "[A] reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right." *First of America*, 171 Ill. 2d at 290. A vested right is defined as "an expectation that is so far perfected that it cannot be taken away by legislation" or as "a complete and unconditional demand or exemption that may be equated with a property interest." *First of America*, 171 Ill. 2d at 290-91. Accordingly, plaintiff's application for registration of its tanks should be governed by the law as amended at the time of appeal, unless doing so would interfere with a vested right.

Applying the foregoing principles, we find that Public Act 87—1088 is pertinent to the present case. We remain unconvinced that plaintiff had a vested right to have its tanks registered when it submitted its forms and fees to the OSFM on January 24, 1991. Public Act 87—1088 will apply to plaintiff, even though plaintiff filed his registration forms prior to the effective date of the amendment, September 15, 1992. Thus, we conclude that the applicable statute is the one at the time of this appeal, as long as it does not interfere with any vested right (430 ILCS 15/4(b)(1)(C) (West 1994)).

■ That said, we now turn to defendants' third argument, that plaintiff is not entitled to register its five removed tanks. Defendants contend that regardless of what amended statute is used, the five removed tanks do not meet the definition of a UST and, thus, are not registrable. We agree.

The applicable statute provides:

"The owner of a heating oil underground storage tank having a capacity of 1,100 gallons or less that was not taken out of operation before January 2, 1974, and that at any time between January 1, 1974, and September 6, 1991, contained heating oil shall register the tank with the [OSFM]. No heating oil underground storage tank taken out of operation before January 2, 1974, may be registered under this Act. No heating oil underground storage tank otherwise required to be registered under this subparagraph (C) may be registered under this Act if that tank was removed before September 6, 1991." 430 ILCS 15/4(b)(1)(C) (West 1994).

Moreover, the Act adopts the federal definition of an UST, where "the term 'underground storage tank' means any one or combination of tanks *** which is used to contain an accumulation of regulated substances, and the volume of which *** is 10 per centum or more beneath the surface of the ground" (42 U.S.C. § 6991(1) (1988)).

A case, similar to the instant one, has been decided by the appellate court, *OK Trucking Co. v. Armstead*, 274 Ill. App. 3d 376, 653 N.E.2d 858 (1994). In *OK Trucking Co.*, the plaintiff had purchased a truck terminal facility that had a number of USTs on the property. *OK Trucking Co.*, 274 Ill. App. 3d at 377. In 1986, the plaintiff removed two of the tanks and attempted to register them in 1992. However, the OSFM denied this registration and the plaintiff brought suit. The appellate court affirmed the lower court, pronouncing that the removed tanks did not fall within the statutory definition of an UST at the time the plaintiff sought to register the tanks. Thus, the court held that the "Act provides for the registration of underground storage tanks, not the registration of tanks that were formerly in the ground or of those sites where underground storage tanks once were located." *OK Trucking Co.*, 274 Ill. App. 3d at 380.

In the case *sub judice*, plaintiff's heating oil tanks cannot be registered for three reasons. First, it is undisputed that plaintiff's tanks were taken out of service in 1964, filled with sand and rendered inoperable in 1972. Since the statute explicitly states that "no *** underground storage tank taken out of operation before January 2, 1974, may be registered under this Act" (430 ILCS 15/4(b)(1)(C) (West 1994)), clearly, plaintiff's tanks are not registrable. Second, plaintiff attempted to register five of its tanks on January 24, 1991, after having removed them on April 23, 1990. The Act provides that no "heating oil underground storage tank *** may be registered under this Act if that tank was removed before September 6, 1991." 430 ILCS 15/4(b)(1)(C) (West 1994). Since plaintiff's heating oil tanks were removed prior to September 6, 1991, they cannot be registered.

Finally, at the time of registration, the five tanks did not fall under the clear definition of an UST, as they were no longer beneath the surface of the ground. They were nonexistent. Accordingly, we reverse the trial court's decision and enter summary judgment in favor of defendants.

On a cross-appeal, plaintiff submits that it was entitled to an award of attorney fees pursuant to section 10—55 of the Illinois Administrative Procedure Act (5 ILCS 100/10—55 (West 1992)). Because we reverse the summary judgment order in favor of plaintiff, we have determined that plaintiff is not entitled to register its tanks. As such, plaintiff has failed to make the threshold showing that it has invalidated an agency action, as required by section 10—55. Accordingly, we affirm the trial court's decision as to its denial of attorney fees.

We note that defendant raised alternative arguments; however, in light of the disposition of the foregoing issues, we need not address them.

Accordingly, we reverse the judgment of the circuit court of Cook County where it granted plaintiff's request for registration.

Affirmed in part; reversed in part.

CERDA and GREIMAN, JJ., concur.