No. 2--07--0414     Filed: 2-26-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KATHERINE SIBENALLER, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--MR--79 |
| | ) | |
| JACQUELYN MILSCHEWSKI, as City | ) | |
| Clerk for the United City of Yorkville, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (North Star Trust Company, as Trustee under | ) | |
| Trust Agreement dated August 8, 2006, and | ) | |
| known as Trust Number 06--9993; Fox Valley | ) | Honorable |
| Moraine, LLC; Eric Schanze; and Diane | ) | Thomas E. Mueller, |
| Schanze, Intervenors-Appellees). | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

The United City of Yorkville (City) passed an ordinance annexing property (the territory) in accordance with section 7--1--8 of the Illinois Municipal Code (Code) (65 ILCS 5/7--1--8 (West 2006)). Intervenors, North Star Trust Company, Fox Valley Moraine, LLC, and Eric and Diane Schanze, own property in the territory. Plaintiff, Katherine Sibenaller, and others filed a petition (referendum petition) with the City, claiming that a referendum on the annexation was required under section 7--1--6 of the Code (65 ILCS 5/7--1--6 (West 2006)). Plaintiff then filed a complaint for mandamus to order defendant, Jacquelyn Milschewski, the City clerk, to present the referendum petition to the Kendall County clerk so that the referendum could be held. The trial court dismissed

the complaint (see 735 ILCS 5/2--619.1 (West 2006)). Plaintiff appeals. We hold that section 7--1--6's referendum requirement does not apply to annexations under section 7--1--8. Therefore, we affirm.

On September 26, 2006, the City enacted an ordinance annexing the territory. On October 12, 2006, the referendum petition was filed with defendant's office. It demanded that the annexation be submitted to a vote by the electors residing in Yorkville. The mandamus complaint alleged that, under section 7--1--6, defendant was required to submit the referendum petition to the county clerk so that the clerk could schedule the referendum. Defendant and intervenors moved to dismiss, contending that the annexation was not subject to section 7--1--6. They observed that the territory was annexed via section 7--1--8, which allows the owners of record of all land within an area, and a majority of the electors of that area, to petition a municipality for annexation. According to defendant and intervenors, section 7--1--8 does not condition an annexation thereunder on the approval of the annexing municipality's electors, and section 7--1--6's referendum requirement applies only to court-supervised annexations under sections 7--1--2 through 7--1--5. Thus, they concluded, the annexation of the territory was final when the City approved it on September 26, 2006. The trial court agreed and dismissed the complaint.[1] Plaintiff appeals.[2]

---

[1]Defendant and intervenors also contended that, in any event, the complaint did not plead sufficient facts to establish that the referendum petition complied with section 7--1--6's procedural requirement. Given our disposition of this appeal, we need not consider this argument.

[2]After the trial court ruled in her favor, defendant petitioned for sanctions (see 155 Ill. 2d R. 137). The sanctions petition was pending when plaintiff filed her appeal, but defendant then voluntarily dismissed it. Thus, we have jurisdiction over this appeal. See Official Reports Advance

To frame the issue on appeal, we set out the disputed provisions of the Code. Our analysis will relate these provisions to the others bearing on this appeal. Section 7--1--8 states:

"Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality at the time of annexation and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory and by at least 51% of the electors residing therein shall be filed with the municipal clerk. The petition shall request annexation and shall state that no electors reside therein or that at least 51% of such electors residing therein join in the petition, whichever shall be the case, and shall be under oath. The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory. A majority of the corporate authorities then holding office is required to annex. The vote shall be by 'yeas' and 'nays' entered on the legislative records. A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder and filed with the County Clerk within the county wherever the annexed territory is located." 65 ILCS 5/7--1--8 (West 2006).

Section 7--1--8 does not in itself require an annexation ordinance to be submitted to a referendum. However, plaintiff contends that a referendum is required by section 7--1--6, which, as pertinent here, states:

"(a) If the vote is in favor of annexing the described territory, the corporate authorities on their own motion may order a referendum on the question. If the corporate authorities

Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007.

-3-

reject annexation, or <u>do not order a referendum, then within the 30 day period a petition may be filed with the municipal clerk requesting that the question of the annexation of the described territory be submitted to the electors of the annexing municipality</u>. The petition shall be signed by electors of the annexing municipality equal in number to 10% of the entire vote cast for all candidates for mayor or president of the annexing municipality at the last preceding general municipal election. The municipal clerk shall certify the proposition to the proper election authority for submission to the electors at an election in accordance with the general election law ***.

(b) If a majority of the electors voting on this question favor annexation, the decision of the corporate authorities, if in favor of annexation, shall be final. If a majority of the electors voting on this question favor annexation, after the corporate authorities have rejected annexation, the decision of the electors shall be final. In either case, the described territory shall thereupon be a part of the annexing municipality.

(c) If the vote is against annexation, no further proceedings shall be had on that petition for annexation, and no action in favor of the annexation shall have any effect." (Emphasis added.) 65 ILCS 5/7--1--6(a), (b), (c) (West 2006).

According to plaintiff, the term "the vote" in the first sentence of section 7--1--6(a) is unqualified and thus refers to any vote on an annexation, including one by the municipality's corporate authorities in accordance with section 7--1--8. Defendant and intervenors counter that "the vote" referenced in section 7--1--6 is a specific type of vote, <u>i.e.</u>, one under section 7--1--5, which requires the corporate authorities of the annexing municipality to decide on an annexation that has been approved by court order after proceedings under sections 7--1--2 through 7--1--4. Defendant

and intervenors reason that, had the legislature intended to require referenda on section 7--1--8 annexations, it would have inserted that requirement directly into section 7--1--8.

Defendant and intervenors also observe that, in the only published case that has heretofore addressed the issue, the appellate court agreed with their reading of the Code. In Swinger v. Municipal Officers' Electoral Board, 180 Ill. App. 3d 74 (1989), a village annexed property via section 7--1--8. The petitioners petitioned the village for a referendum under section 7--1--6. The respondent, the village electoral board, invalidated the petition on procedural grounds, and the circuit court affirmed. Swinger, 180 Ill. App. 3d at 76. The appellate court reversed, holding that the respondent never acquired jurisdiction over the petition. Swinger, 180 Ill. App. 3d at 76. However, the court then commented that section 7--1--8 did not provide for a referendum and that section 7--1--6 "was wholly inapplicable" to an annexation under section 7--1--8. Swinger, 180 Ill. App. 3d at 77. Therefore, the court noted, the village simply should have rejected the petition as a nullity. Swinger, 180 Ill. App. 3d at 77.

The parties disagree over whether the comments in Swinger are precedential judicial dicta (see People v. Williams, 204 Ill. 2d 191, 206 (2003)) as well as over whether they are correct. We need not resolve the first issue, because, as we explain, we agree with Swinger's reading of the Code.

Under section 2--619.1 of the Code of Civil Procedure, a complaint may be dismissed either because it is insufficient in law (see 735 ILCS 5/2--615(a) (West 2006)) or because it is barred by affirmative matter that avoids the legal effect of the claim (see 735 ILCS 5/2--619(a) (West 2006)). 735 ILCS 5/2--619.1 (West 2006). Here, the issue is not whether some affirmative matter bars plaintiff's claim but whether the complaint itself states a cause of action. See Lee v. Findley, 359 Ill. App. 3d 1130, 1136 (2005). Therefore, we must decide whether the complaint's allegations, construed in the light most favorable to plaintiff, establish a valid claim for relief. See Jackson v.

South Holland Dodge, Inc., 197 Ill. 2d 39, 45 (2001). Our review is de novo. Hill v. PS Illinois Trust, 368 Ill. App. 3d 310, 312 (2006).

Mandamus is an extraordinary remedy by which a court requires a public officer to perform an official and nondiscretionary duty. See Board of Education v. Armstead, 279 Ill. App. 3d 922, 927 (1996). Because plaintiff's mandamus complaint is based on her interpretation of the Code, we set out the pertinent rules of statutory construction. Our primary aim is to ascertain and effectuate the intent of the legislature. Wauconda Fire Protection District v. Stonewall Orchards, LLP, 214 Ill. 2d 417, 430 (2005). The best indicator of this intent is the statutory language itself; if it is unambiguous, we must apply it straightforwardly. Hood v. Illinois High School Ass'n, 359 Ill. App. 3d 1065, 1069 (2005). We must construe the statute as a whole, considering each part in conjunction with the other parts. People ex rel. Director of Corrections v. Booth, 215 Ill. 2d 416, 423 (2005). Specific terms in a statute take color from the words surrounding them and must be interpreted in their context. Cooper v. Department of the Lottery, 266 Ill. App. 3d 1007, 1017 (1994). In the event of ambiguity, we may also look to the statute's legislative history. People v. Howard, 372 Ill. App. 3d 490, 497 (2007).

Here, as defendant observes, section 7--1--8 does not provide for a referendum on a nonjudicial annexation. We agree with defendant and intervenors that this silence speaks clearly. Had the legislature intended to condition a section 7--1--8 annexation on the approval of the annexing municipality's electors, it easily could have inserted that requirement into section 7--1--8. Instead, section 7--1--8 states only that "[a] majority vote of the corporate authorities *** is required to annex." 65 ILCS 5/7--1--8 (West 2006). Moreover, immediately after specifying how that vote must be taken, section 7--1--8 concludes by stating that the municipality must record a copy of "the ordinance annexing the territory." (Emphasis added.) 65 ILCS 5/7--1--8 (West 2006). The plain

import of this sequence of commands is that a favorable vote by the corporate authorities completes the annexation, with no further contingency.

Nonetheless, plaintiff insists that, although section 7--1--8 nowhere mentions a referendum, the first sentence of section 7--1--6(a) requires one. Plaintiff maintains that, because the term "the vote" is unqualified, it refers to any vote on annexation, including one by a municipality's corporate authorities under section 7--1--8. For several reasons, we find this reasoning unpersuasive.

First, plaintiff's argument is flawed on its own terms. The term "the vote" is not synonymous with "any vote" but is more nearly its antithesis. "The" is a restrictive term; it indicates that "a following noun or noun equivalent refers to someone or something previously mentioned or clearly understood from the context or the situation." Webster's Third New International Dictionary 2368 (1986). Thus, a principle of statutory construction is that "the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' " (Emphasis added.) Brooks v. Zabka, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) (also holding that ordinance's use of term "the tax levy" showed that legislature intended to refer to specific type of tax levy and not any tax levy); see also Stephan v. Pennsylvania General Insurance Co., 224 Conn. 758, 764, 621 A.2d 258, 261 (1993) (applying same principle to construction of insurance policy and holding that exclusion's use of term "the bodily injury," instead of "a bodily injury" or "any bodily injury," limited exclusion to specific type of bodily injury). Therefore, far from suggesting that the legislature intended section 7--1--6's referendum requirement to apply across the board, the use of the term "the vote" indicates an intent that the requirement apply only in limited circumstances.

Second, the infirmity of plaintiff's construction of "the vote" becomes fully evident when the term is read in context, which we can more clearly do considering the pertinent sections of Article

VII of the Code (65 ILCS 5/7--1--1 et seq. (West 2006)) as a coherent whole. Following some generally applicable provisions (65 ILCS 5/7--1--1, 7--1--1.1 (West 2006)), sections 7--1--2 through 7--1--5 set out the preliminary phases of an annexation that is initiated in a circuit court by either a municipality or a majority of property owners and electors in a given territory. These steps include the filing of an ordinance (by the municipality) or a petition (by the land owners/electors) requesting annexation (see 65 ILCS 5/7--1--2 (West 2006)); the filing of objections to the ordinance or petition (see 65 ILCS 5/7--1--3 (West 2006)); and a hearing on the ordinance or petition (65 ILCS 5/7--1--4 (West 2006)). Following these sections are those that provide for submitting the judicially approved ordinance or petition to a referendum. In the special case of an ordinance to annex unincorporated territory, section 7--1--7 sets out the procedure for the electors of the territory to vote their approval or disapproval. See 65 ILCS 5/7--1--7 (West 2006). Otherwise, sections 7--1--5 and 7--1--6 apply in sequence to a judicially approved annexation. It is in this specific context that the controverted language of section 7--1--6 must be read.

Section 7--1--5 sets out the required procedures after a circuit court approves an annexation petition or ordinance. It requires a vote by the municipality's corporate authorities and specifies, "The vote shall be by 'ayes' and 'noes' entered on the legislative records." (Emphasis added.) 65 ILCS 5/7--1--5 (West 2006). This vote takes effect after 30 days unless the corporate authorities order a referendum or unless a referendum petition is filed (65 ILCS 5/7--1--5 (West 2006)). Section 7--1--6 picks up where section 7--1--5 leaves off. It begins, "If the vote is in favor of annexing" (emphasis added) (65 ILCS 5/7--1--6(a) (West 2006)) and sets out the requirements for obtaining a referendum, either on the corporate authorities' initiative, if they have voted for annexation, or on the initiative of electors residing in the municipality, if the authorities have rejected annexation or refused to order a referendum (65 ILCS 5/7--1--6(a) (West 2006)).

Both common sense and sound principles of statutory construction leave us with no doubt that "the vote" referenced in section 7--1--6(a) is also "the vote" referenced almost immediately before in section 7--1--5. This conclusion is especially sensible when it is recognized that, for many years, section 7--1--5 was followed directly by section 7--1--6, the intervening sections having been added more recently to address special situations. See 65 ILCS 5/7--1--5.1 (West 2006) (commercial or industrial property with given characteristics), added by Pub. Act 85--1421, §1, eff. December 15, 1988; 65 ILCS 5/7--1--5.2 (West 2006) (groundwater contamination), added by Pub. Act 87--1196, eff. January 1, 1993; 65 ILCS 5/7--1--5.3 (West 2006) (petition of developer of planned unit development to annex property adjacent to "rail-trail"), added by Pub. Act 94--361, §5, eff. January 1, 2006.

Furthermore, the first sentence of section 7--1--6(a) concerns "the vote" on "annexing <u>the described territory</u>." (Emphasis added.) 65 ILCS 5/7--1--6(a) (West 2006). The term "the described territory" plainly refers back to section 7--1--4, which requires a circuit court that finds an annexation ordinance or petition valid to "enter an order describing the territory to be annexed" (65 ILCS 5/7--1--4 (West 2006)), and to section 7--1--5, which requires the corporate authorities who receive that order to consider "the question of the annexation of the described territory" (65 ILCS 5/7--1--5 (West 2006)). This is additional proof that the first sentence of section 7--1--6(a) is not free-floating but is tied to the pertinent provisions of sections 7--1--4 and 7--1--5.

In sum, we believe that a reasonable person reading Article VII of the Code as a coherent whole would hardly suspect that "the vote" referenced in section 7--1--6(a) could be any one of a broad and ill-defined set of votes, including one not even mentioned until two sections later. We cannot conceive that the legislature expected people to read Article VII backwards, at least without a direct instruction in section 7--1--8 that it incorporates section 7--1--6(a) by reference. However,

section 7--1--8 does not mention section 7--1--6 any more than section 7--1-- 6 mentions section 7--1--8. Article VII of the Code may be complex or confusing, but we do not believe that the legislature went out of its way to make it far more so.

Because there is no right to a referendum on the annexation here, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur.